## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Task Force Officer James Walsh of the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states as follow in support of a criminal complaint against and arrest warrant for Shawn GROWDEN, year of birth 1990.

## AFFIANT BACKGROUND

1.  I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2.  I am a Detective with Montgomery County Police Department (MCPD), Special Investigations Division, Drug Enforcement Section, Major Offenders/Conspiracy Unit and have been employed with the MCPD since July 2008. Prior to being employed with MCPD, from October 2001 to July 2008, I was a sworn law enforcement officer with the United States Park Police. I have been specially deputized as a Task Force Officer (TFO) by the Federal Bureau of Investigation (FBI) and have authority under Title 21, United States Code, since October of 2014. I graduated from the Federal Law Enforcement Training Center (FLETC) in 2002 and the MCPD Training Academy in January 2009.

3.  During my sixteen years as a law enforcement officer, to include the past four years of conducting undercover narcotics investigations, I have performed controlled purchases of drugs and street level surveillance of drug transactions; utilized informants to make controlled purchases of drugs; worked in an undercover capacity on several occasions involving narcotics investigations targeting street level and interstate narcotics traffickers; obtained and executed search warrants as a result of drug investigations; attended numerous courses and seminars covering drug recognition,



JW 2/28/2020

interdiction, money laundering, conspiracy investigations and secure communications interception; participated in and been a co-case agent on Title III wiretap investigations involving federal narcotics violations; and been recognized and testified as an expert in narcotics trafficking by the Circuit Court and Juvenile Court for Montgomery County, Maryland.

4. I have been involved in the investigation of several Organized Crime Drug Enforcement Task Force (OCDETF) investigations involving drug trafficking organizations. I have extensive experience in debriefing defendants, working with confidential informants, and various persons with direct experience with the methods used to distribute controlled substances.

5. I have also attended numerous other training classes and seminars related to undercover narcotics investigations, drug interdiction, conducting interviews, drug recognition and fraud and money laundering. Additionally, I have developed, taught and continue to teach several continuing educational courses to sworn officers on drug investigations

6. Based on my training and experience, I am familiar with the means and methods that narcotics traffickers use to import and distribute illicit drugs. I am familiar with the support and assistance that narcotics organizations require to conduct their illegal activities. I am also become knowledgeable about the criminal statutes of the United States, particularly in the laws relating to violations of the federal narcotics and conspiracy statutes.

7. Through this training and experience, I have learned about the importation, manufacture, concealment and distribution of controlled substances, including, for example, cocaine, heroin, phencyclidine (PCP), and marijuana. I have become familiar with the use of telephones by drug traffickers to communicate, the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits of illegal drug dealing. Additionally, based on my



2

training and experience and his participation in other narcotics investigations, I know the following: that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, vehicles and/or businesses for ready access; that it is common for drug dealers to conceal proceeds from law enforcement authorities and rival narcotics traffickers; that drug dealers routinely use cellular telephones to facilitate their drug distribution operations; that drug dealing is an ongoing process that requires the development, use, and protection of a communication network to facilitate daily drug distribution; that drug dealers use telephones to thwart law enforcement efforts to penetrate the drug dealers' communication networks; and that narcotics traffickers commonly use "coded" language when speaking with other drug traffickers in order to thwart detection by law enforcement agents who may be intercepting their communications.

8. I submit this Affidavit for the limited purpose of establishing probable cause to support the issuance of a Criminal Complaint charging Shawn GROWDEN with Conspiracy to Distribute and Possession with the Intent to Distribute Heroin, in violation of Title 21 U.S.C. § 846. Because I submit this affidavit for the limited purpose of establishing probable cause to support the issuance of a Criminal Complaint, it only contains a summary of relevant facts. I have not included every fact known to me concerning the entities, individuals, and the events described in this Affidavit.

9. All information contained in this Affidavit is either personally known to me, has been related to me by other law enforcement officers, and/or has been obtained from records, documents, and other sources gathered during this investigation.



2/28/2020

3

**PROBABLE CAUSE**

10. Beginning in 2016, Special Agents and Officers of the FBI, DEA, and Montgomery County Police Department, Maryland (MCPD) began investigating the Gregory BUTLER drug trafficking organization (the "DTO"). The DTO operated in the Baltimore metropolitan area and was a narcotics source of supply for customers traveling from Maryland, Virginia, West Virginia, Pennsylvania, and the District of Columbia. The DTO had the access and means to distribute kilogram-level quantities of heroin and cocaine, in addition to crack cocaine. Weekly narcotics distribution is estimated at a range of one or more kilograms, supplied to customers by vetted DTO re-distributors at one of several pre-determined buy locations across the Baltimore metro area. It is estimated that over five hundred individual customers purchased from BUTLER or his co-conspirators by contacting one of his many phones, purchasing between user "point" quantities and/or redistributor quantities exceeding 100 grams.

11. On October 2, 2018, the Honorable Catherine Blake, United States District Judge for the District of Maryland, authorized the initial interception of wire and/or electronic communications occurring over (443) 641-4783 ("TT1"), a cellular telephone used by Gregory BUTLER to coordinate the sale of drugs to paying customers. Judge Blake authorized the continued interception of wire and/or electronic communications occurring over TT1, up and until BUTLER was arrested in April 2019.

12. During the month of March 2019, law enforcement intercepted communications between TT1 and phone number (540) 550-1620, subscribed in the name of Ashley Growden with an address of 121 Parkside Drive in Frederick County, Virginia, and later determined to be used by Shawn GROWDEN.

4

13. On Mach 18, 2019, the following exchange occurred, which is representative of the communications between GROWDEN using (540) 550-1620 and TT1:

GROWDEN: Yo it white boy from Winchester cool come see you bro
TT 1: 2509 huntingdon ave 21211
GROWDEN: Leaving Charles town now
TT 1: K
GROWDEN: 20 mins away bro
TT 1: How many
GROWDEN: 15
TT 1: K
GROWDEN: I'm here in a white Dodge Caravan
TT 1: K

14. Based on my training, experience, and knowledge of the operations of the BUTLER DTO, during this call, GROWDEN requested to buy drugs from the DTO via text. BUTLER responded via TT1 with the address where GROWDEN should go to conduct the narcotics transaction. In response to the question "How many", GROWDEN stated "15", meaning that he sought to buy 15 grams of heroin. GROWDEN then informed BUTLER of the vehicle in which he was driving, so that a street-level distributor could supply him with the drugs in exchange for U.S. currency.

15. A similar exchange occurred on March 26, 2019, during which GROWDEN sought to purchase 10 grams of heroin from the BUTLER DTO:

GROWDEN: Yo it cool come down
TT1: 300 Laurens st 21217
GROWDEN: Ok
TT1: 1010 Covington st
GROWDEN: Okay I'm on way bro
GROWDEN: Head out Charles town now
TT1: K
GROWDEN: I'm 2o mins away bro and I'm in a Blue Volkswagen Jetta
TT1: How many
GROWDEN: 10
TT1: 700 e heath st 21230
GROWDEN: Ok
GROWDEN: Here

5

TT1:     K

16.     Following this text exchange and the ensuing drug deal, law enforcement followed the Volkswagen Jetta described in the communications above and eventually conducted a traffic stop. During the traffic stop, police recovered 10 grams of heroin from the vehicle and arrested GROWDEN, who was seated in the front passenger of the vehicle.

17.     GROWDEN was advised of his *Miranda* rights and agreed to be interviewed. He informed the police that he had just purchased 10 grams of heroin in Baltimore, Maryland in exchange for $700, and that he had had been traveling to Baltimore on multiple occasions over the prior three weeks to purchase approximately 10 grams of heroin each time. GROWDEN also admitted that he resold the heroin to paying customers.

18.     GROWDEN then provided consent to search his cell phone. The extraction revealed that GROWDEN used phone number (540) 550-1620, that he communicated with TT1 to purchase drugs, and that he redistributed drugs to paying drug customers. For example, on March 16, 2019, GROWDEN texted "I'm on way n made 120 of half g baby." Based on my training and experience, during this text, GROWDEN was stating that he received $120 in exchange for selling half a gram of heroin.

19.     Based on the foregoing facts, I believe probable cause exists to support the issuance of a Criminal Complaint and arrest warrant charging Shawn GROWDEN with Conspiracy to Distribute and Possession with the Intent to Distribute Heroin, in violation of Title 21 U.S.C. § 846.



JW
2/24/2020

_____
Task Force Officer James Walsh
Federal Bureau of Investigation

Subscribed and sworn to before me this 28 day of February 2020

_____
Hon. Thomas M. DiGirolamo
United States Magistrate Judge

7